Donald Oliver HORNSBY, Appellant,

v.

UNITED STATES POSTAL SERVICE.

No. 85–3292.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Jan. 16, 1986.

Decided March 26, 1986.

Eliot B. Gerstein, Hartford, Conn. (Allan W. Koerner, Gersten & Gersten, Hartford, Conn., of counsel), for plaintiff-appellant Trinity Ambulance Service, Inc.

Sidney T. Schulman, Hartford, Conn., for plaintiff-appellant Aetna Ambulance Service, Inc.

Anthony J. Palermino, Hartford, Conn., for defendant-appellee L & M Ambulance Corp.

Martin S. Stillman, Rocky Hill, Conn., for defendant-appellee Professional Ambulance Service, Inc.

James A. Wade, Hartford, Conn. (Janet C. Hall, Theodore J. Tucci, Robinson & Cole, Hartford, Conn., of counsel), for defendant-appellee City of Hartford.

Arthur A. Palmunen, Hartford, Conn., for defendant-appellee G & L Ambulance Services, Inc.

Before OAKES, WINTER and PRATT, Circuit Judges.

Paul J. McArdle, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty., Philadelphia, Pa., Stephen E. Alpern, Associate Gen. Counsel, Joan C. Goodrich, Atty., Washington, D.C., for appellee.

Before SEITZ and GIBBONS, Circuit Judges and GERRY, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Donald Hornsby, a former employee of the United States Postal Service, appeals from an order granting a Rule 12(b)(1) motion to dismiss his complaint against the Postal Service for lack of subject matter jurisdiction. The complaint alleged that the Postal Service, in denying his application for reemployment, discriminated against Hornsby on account of his race in violation of the Civil Rights Act of 1972.[1] The district court held that the civil action was untimely because Hornsby failed to file his complaint within the thirty-day time period specified by the Act. In so ruling the district court held that postal delivery to Hornsby's mailbox of a notice requesting that he pick up a certified letter—which happened to be the right-to-sue letter mailed to Hornsby by the Equal Employment Opportunity Commission—triggered the running of the Act's time period, even though Hornsby had never received the letter. The court also held that it could determine whether, as a matter of fact, the Postal Service had deposited the notice in Hornsby's mailbox by resolving disputed affidavits without an evidentiary hearing. We hold that the court erred in both respects, and we reverse.

## I.

After having worked for the Postal Service from 1956 to 1963, Hornsby applied for reinstatement in January and April 1970 and in January 1977. The Postal Service declined to rehire him, and Hornsby subsequently submitted a discrimination complaint to the Equal Employment Opportunity Commission (EEOC).

On February 23, 1983 Hornsby filed a complaint in the Western District of Pennsylvania alleging that, although he had submitted a complaint to the regional office of the EEOC in January 1982 and had later appealed to the EEOC Review and Appeals Section, no decision had been rendered as of the date of the filing of his lawsuit. In so alleging Hornsby intended to satisfy the provision in Title VII precluding the filing of a civil action in district court until a charge has been pending before the EEOC for 180 days. 42 U.S.C. § 2000e–16(c) (1982).

In response to the complaint the Postal Service filed a motion in which it requested the district court either to dismiss Hornsby's complaint or to grant it summary judgment. In support of that motion the Postal Service filed affidavits suggesting (1) that on August 16, 1982 the EEOC Office of Review and Appeals took final action rejecting Hornsby's claim; (2) that shortly thereafter the EEOC mailed to Hornsby's home address a certified letter, dated August 17, 1982, notifying him of that decision; (3) that on August 21, 1982 the Postal Service attempted but was unable to deliver that letter; (4) that on that date a letter carrier deposited in Hornsby's

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. The present codification of the Civil Rights Act of 1972 provides that "[a]ll personnel actions affecting employees or applicants for employment ... in the United States Postal Service ... shall be made free of any discrimination based on race." 42 U.S.C. § 2000e–16(a) (1982).

mailbox a notice asking Hornsby to pick up the certified letter or telephone the Post Office to arrange for another delivery; (5) that four days later a letter carrier placed a similar notice in the same box; and (6) that the letter was never picked up or delivered.

In response to the Postal Service's motion Hornsby and his wife both filed affidavits in which they claimed they checked their mailbox daily and that in August of 1982 they had not received any notice that the Post Office was holding mail from the EEOC. The answering affidavits thus put in issue the Postal Service's version of the facts with respect to delivery of the notices.

## II.

The district court, after concluding that the deposit of the notices of attempted delivery of certified mail in Hornsby's mailbox was legally sufficient to trigger the running of the thirty-day time limit for filing a Title VII action against the federal government, proceeded to resolve the dispute over the delivery of the notices by crediting the Postal Service affidavits and discrediting those of Hornsby and his wife. Conceding that if the standard mandated by Federal Rule of Civil Procedure 56 had been applicable it would have been improper to resolve material issues of disputed facts on conflicting affidavits, the court held that a different standard applied. Characterizing the issue of the timeliness of the filing of a Title VII action as "jurisdictional," the court relied on the principle, articulated in *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), that a district court may rule on a Rule 12(b)(1) motion on affidavits without an evidentiary hearing. *See Hornsby v. United States Postal Service,* Civil Action No. 83–411, slip op. at 8 (W.D.Pa. Apr. 19, 1985) (quoting and relying upon *Mortensen v. First Federal Sav-*

*ings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977)).

■ In this respect the court erred. The time limits in Title VII are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982). The case on which the district court relied, *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), is not on point. In *Brown* the Supreme Court did not address the question whether a Title VII time limit was a matter that went to subject matter jurisdiction— and thus fell within the *McNutt* rule. While the district court also referred to lower court cases describing the timeliness of a Title VII suit as "jurisdictional," in each of those cases the court resolved the issue of timeliness in a manner consistent with Rule 56.[2] The *McNutt* rule is inapplicable to the resolution of disputed issues of material fact with respect to the applicability of statutes of limitation. The district court committed legal error in relying on the *McNutt* rule in this case.

## III.

Since our disposition of the above point will require further proceedings, the district court may face the issue whether, assuming the Postal Service did indeed place in Hornsby's mailbox a request that he pick up the certified letter, that alone triggers the running of the thirty-day time limit for filing suit. Thus we address that issue as well.

On the subject of the timeliness of complaints filed in district court by federal employees, Title VII provides,

Within thirty days of receipt of *notice* of final action taken by ... the Equal Employment Opportunity Commission ..., an employee or applicant for employ-

---

**2.** The district court referred to *Gaballah v. Johnson,* 629 F.2d 1191 (7th Cir.1980); *Hofer v. Campbell,* 581 F.2d 975 (D.C.Cir.1978), *cert. denied,* 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979); and *Roth v. Naval Aviation Supply Of-*

*fice,* 443 F.Supp. 413 (E.D.Pa.1978). In none of these cases did a court resolve on conflicting affidavits a factual dispute concerning the time of filing.

ment, if aggrieved by the final disposition of his complaint ..., may file a civil action as provided in section 2000e–5 of this title....

42 U.S.C. § 2000e–16(c) (1982) (emphasis added).[3] The cross-reference to section 2000e–5 is to the provisions of Title VII of the Civil Rights Act of 1964, Pub.L. No. 88–352, § 706(e), 78 Stat. 241, 259–62 (codified as amended at 42 U.S.C. § 2000e–5 (1982)), that the Civil Rights Act of 1972 made applicable to departments and agencies of the federal government. *See* Pub.L. No. 92–261, § 717, 86 Stat. 103, 112 (codified at 42 U.S.C. § 2000e–16(c) (1982)).

The causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC (or a state conciliation agency) for conciliation or resolution. If the claim is against an agency of the United States, the EEOC must have held it for 180 days or finally rejected it before any Title VII cause of action arises. It therefore was entirely to be expected that in drafting the statute of limitations for bringing such a cause of action Congress would key the commencement of the running of the time bar to notice to prospective plaintiffs that the precondition for lawsuits had been satisfied. It would have made little sense to commence the running of a statute of limitations upon the happening of an event of which the holder of the cause of action in question had no knowledge. The thought that a statute of limitations begins to run from the time its holder has knowledge of the facts giving rise to it is an entirely conventional one. *E.g.*, Annot., 70 A.L.R.3d 7, 26–28 (1976) (collecting cases from jurisdictions that have adopted the "discovery rule" in medical malpractice cases); Annot., 4 A.L.R. 821, 837 & n. 14

(1965) (collecting cases from jurisdictions that have adopted the "discovery rule" in product liability cases); *see also Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1200, 1204 (1950).

This court has already noted the significance of a claimant having notice of the happening of the events that are preconditions to a Title VII claim against the United States. In *Allen v. United States*, 542 F.2d 176 (3d Cir.1976), we wrote,

It seems to us that the 30-day provision in [section 2000e–16(c)] was intended primarily for the purpose of affording to the government in matters of employment a prompt final resolution of the status of the employee in question. Neither the stale claim policy nor the prompt termination of litigation policy seem to be implicated, for other regulations cover the time for presenting claims administratively, and no statute fixes any outside time for their administrative disposition. The primary interest seems to be that of the Executive Branch in final resolution of the employee's status. The Commission has been given the responsibility for ensuring that all personnel actions affecting employment in the Federal Government are to be free from any discrimination based on race, color, religion, sex, or national origin, and has been provided with the remedial tools to implement this mandate. 42 U.S.C. § 2000e–16(a) and (b). Consequently, we see no obstacle to its assertion of the power to define by regulation the contents of its "final action." It will, we are confident, adequately protect the interests of the Executive Branch. Indeed, acknowledging the validity of 5 C.F.R. § 713.234, 282 (1976), in no way enlarges the actual power of the Commission to delay resolution of a pending dispute, since it could in any event merely withhold a final opinion. With so short a limitations period, it makes eminent good

---

**3.** The provision governing the filing of Title VII complaints by individuals who are not federal employees differs slightly. It provides that the EEOC "shall ... notify the person aggrieved [of final adverse agency action] and within ninety days after the giving of such notice a civil action may be brought." 42 U.S.C. § 2000e–5(f)(1) (1982). However, both provisions refer to *notice* not to service or filing. Compare Fed.R. Civ.P. 5(c); Fed.R.App.P. 3(a).

sense to recognize that the power of starting its running is in the hands of the Commission, and that its regulations provide an unequivocal means for exercising that power. Thus we conclude that the Commission's regulations defining the content of its final action are valid. The failure of the Commission to notify Allen and Koon of their right to file a civil action and of the 30-day limit for filing rendered the Commission's January 15, 1973 opinion a non-final action of the Commission.

*Id.* at 179–80. In *Allen* we thus treated the time bar in section 2000e–16(c) as a conventional statute of limitations that commences to run only when the holder of a cause of action is aware that it has arisen.

We are not dealing in this instance with the issue whether adequate notice to a designated agent, such as an attorney retained to process a Title VII claim, should commence the running of the statute of limitations,[4] for Hornsby dealt with the EEOC pro se. Nor are we dealing with the issue whether delivery of adequate notice to the address given by the complainant to the EEOC but from which the complainant has moved without notice triggers the running of the prescription period.[5] We are not even dealing with the effect on the statute of limitations of an adequate notice deposited in the complainant's own mailbox but retained for some period by a member of his or her household.[6] Here the government concedes that the EEOC's letter was neither delivered to an agent for Hornsby nor deposited in his mailbox. What the government's affidavits tend to establish (and, as noted, what Hornsby disputes) is that the Postal Service placed in Hornsby's mailbox a form notifying him that a letter addressed to him could be picked up at the Post Office. That form, Postal Service Form 3849, does not disclose the name or address of the sender nor does it convey any other relevant information; it states simply that an unknown person has mailed a certified letter to the addressee. For the purpose of conveying to an addressee notice of the EEOC's final action, Form 3849 is meaningless.[7]

■ Section 2000e–16(c) does not specify any method of giving notice. However, it does provide that the thirty-day filing period does not start to run until "receipt of notice of final action." Should the government on remand establish no more than that the Postal Service on two occasions deposited Form 3849 in Hornsby's mailbox, it will have failed, as a matter of law, to establish that the thirty-day time limit in section 2000e–16(c) bars Hornsby's complaint.

## V.

The judgment dismissing the complaint as time-barred will be reversed and the case remanded for further proceedings consistent with this opinion.

---

4. *See, e.g., Jones v. Madison Service Corp.,* 744 F.2d 1309, 1311–14 (7th Cir.1984); *Harper v. Burgess,* 701 F.2d 29, 30 (4th Cir.1983); *Thomas v. KATV Channel 7,* 692 F.2d 548, 549–51 (8th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 790 (1983); *Decker v. Anheuser-Busch,* 632 F.2d 1221, 1223–24 (5th Cir. 1980), *vacated and remanded,* 670 F.2d 506 (5th Cir.1982) (en banc); *Gonzales v. Stanford Applied Engineering, Inc.,* 597 F.2d 1298, 1299 (9th Cir.1979).

5. *See, e.g., St. Louis v. Alverno College,* 744 F.2d 1314, 1316–17 (7th Cir.1984); *Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1242–43 (11th Cir. 1982).

6. *See Espinoza v. Missouri Pacific R.R.,* 754 F.2d 1247, 1248–50 (5th Cir.1985); *Law v. Hercules,* *Inc.,* 713 F.2d 691, 692–93 (11th Cir.1983); *Bell v. Eagle Motor Lines, Inc.,* 693 F.2d 1086, 1086–87 (11th Cir.1982); *Archie v. Chicago Truck Drivers Helpers & Warehouse Workers Union,* 585 F.2d 210, 213–16 (7th Cir.1978).

7. If a certified letter, a registered letter, insured mail, or other mail requiring a receipt is undelivered for a specific period, it is under Postal Service regulations returned to the sender. That was done in this case, for the envelope is attached to the affidavit of Dolores L. Rozzi, Director of the EEOC Office of Review and Appeals. Thus the return of the letter put the EEOC on notice that Hornsby in fact did not receive notice of its final action. So far as the record discloses, the EEOC made no effort to convey to Hornsby actual notice by some other means such as regular mail.