**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

HAROLD R. JACKSON,

     Plaintiff-Appellant,

v.

CONTINENTAL CARGO - DENVER,
named as Continental Airlines/
Continental Cargo - Denver,

     Defendant-Appellee,

No. 97-1398

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-D-1928)

---

Charles F. Kaiser of Denver, Colorado, for Plaintiff-Appellant.

Alan Epstein (Marianne E. Pierce, with him on the brief) of Hall & Evans, L.L.C.,
Denver, Colorado, for Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, **BRORBY** and **HENRY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Harold R. Jackson sued his former employer, Continental Airlines, asserting that Continental violated 42 U.S.C. §§ 2000e *et seq.* by discharging him on the basis of race and in retaliation for his complaints about illegal employment practices. The district court granted Continental's motion for summary judgment, concluding that Mr. Jackson had not filed this action within ninety days of receiving notification of his right to bring a civil action from the Equal Employment Opportunity Commission (EEOC), as required by section 2000e-5(f)(1). Mr. Jackson appeals and we reverse.

"We review a grant of a motion for summary judgment de novo, applying the same standards as the district court." *Habermehl v. Potter*, 153 F.3d 1137, 1138 (10th Cir. 1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Habermehl*, 153 F.3d at 1138.

The EEOC sent Mr. Jackson by certified mail a determination letter informing him of his right to sue. Mr. Jackson resided in an apartment complex that maintained mail boxes for its residents in a central location, although he was temporarily staying with another person at a different address during the time the

Postal Service attempted to deliver the certified letter. On three separate occasions, the Postal Service left Form 3849 notices in Mr. Jackson's apartment mailbox informing him of the attempted delivery of the certified letter and that he could pick up the letter at the post office. These notices did not tell Mr. Jackson the identity of the sender. Notations on the letter itself indicated that delivery was attempted on April 19, April 27, and May 4, 1995. Mr. Jackson checked his mailbox on May 4 and picked up the letter at the post office that day. He filed a pro se complaint on August 1, 1995, 89 days after he retrieved the letter on May 4, but 104 days after the Postal Service first attempted delivery on April 19.

Mr. Jackson was deposed about his actions in obtaining the certified letter. He explained that he "was living with another person, more or less," and spent most of his time at a different address. Aplt. App. at 45. When asked why he did not check his mailbox more often, Mr. Jackson stated that "I just didn't go. I wasn't there during that time, and there was nothing that was pressing that I needed to go to the mailbox and check for." *Id.* He repeated that "I didn't have anything pressing that I thought would be there that I needed to check out, to see if I had anything of any importance." *Id.* at 46. The record further reveals that prior to that time, the most recent communication from the EEOC had been received by Mr. Jackson five months earlier, when the EEOC sent Mr. Jackson a letter stating that it would "serve as the Commission's Pre-Determination

Interview." *Id.* at 63. The letter detailed in over four single-spaced pages the EEOC's investigation of Mr. Jackson's complaint and ended by stating that if Mr. Jackson had any other information he wished to have considered, he should submit it utilizing the self-addressed stamped envelope within ten days after receipt of the letter. *Id.* The letter did not tell Mr. Jackson what the next step in the process would be or when it was likely to occur.

Section 2000e-5(f)(1) provides that if, as here, the EEOC dismisses administrative charges brought by an aggrieved person, the EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought." The contents of this notice are prescribed by regulation and include "[a]uthorization to the aggrieved person to bring a civil action under title VII . . . within 90 days *from receipt of such authorization*." 29 C.F.R. § 1601.28(e) (emphasis added). In keeping with the regulation, the certified letter from the EEOC in this case stated that it became effective upon receipt, and that Mr. Jackson's right to sue would be lost if he did not file a lawsuit within ninety days of that date. The letter ended by reiterating that "THE CHARGING PARTY MAY ONLY PURSUE THIS MATTER BY FILING SUIT IN FEDERAL DISTRICT COURT AGAINST THE RESPONDENT(S) NAMED IN THE CHARGE *WITHIN **90 DAYS OF RECEIPT OF THIS LETTER***." Aplt. App. at 6 (emphasis added). Our task is to determine which acts constituted Mr.

-4-

Jackson's "receipt" of the notice of his right to sue, thus triggering the ninety-day period within which he was required to file this civil action.

The factual scenarios addressed in the caselaw are surprisingly varied and have produced a corresponding variation in the approaches and results adopted by the courts. *See generally O'Neal v. Marine Midland Bank, N.A.*, 848 F. Supp. 413, 417-19 (W.D.N.Y. 1994) (citing cases and describing approaches), *aff'd*, 60 F.3d 812 (2d Cir. 1995) (Table). We begin our consideration here by observing that this case does not involve the issue of constructive receipt, that is, the situation in which the right-to-sue letter itself is actually delivered to the plaintiff's residence and accepted by a family member or other authorized person. *See, e.g., Million v. Frank*, 47 F.3d 385 (10th Cir. 1995). Nor are we presented with a plaintiff who did not receive actual notice because he failed to provide the EEOC with a current mailing address. *See St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir. 1984). Here, we must decide whether Mr. Jackson received notice of his right to sue when the Postal Service first attempted delivery and left a generic Form 3849 notice in his mailbox, or when Mr. Jackson actually picked up his mail at the post office. Circuits that have considered these circumstances have reached contrary results.

In *Hornsby v. United States Postal Serv.*, 787 F.2d 87 (3d Cir. 1986), the court held that delivery of Postal Form 3849 alone does not start the limitation

period.  The court observed that the form

> does not disclose the name or address of the sender nor does it
> convey any other relevant information; it states simply that an
> unknown person has mailed a certified letter to the addressee.  For
> the purpose of conveying to an addressee notice of the EEOC's final
> action, Form 3849 is meaningless.

*Id.* at 91.  The court refused to begin the period upon delivery of the form, pointing out that it makes "little sense to commence the running of a statute of limitations upon the happening of an event of which the holder of the cause of action in question had no knowledge."  *Id.* at 90.  The court distinguished those cases in which the right-to-sue letter was given to a designated agent such as an attorney, or was delivered to the plaintiff's address and accepted by a member of the plaintiff's household, or where the claimant had failed to give the EEOC a current address.  *See id.* at 91.

In *Sousa v. NLRB*, 817 F.2d 10 (2d Cir. 1987), the court likewise refused to hold that delivery of Form 3849 alone triggered the running of the limitation period.  There, the notice to pick up certified mail was delivered to the plaintiff's mailbox five days before she picked up the right-to-sue letter at the post office.  The court held that the limitation period did not begin to run until the claimant actually received the letter, noting that the plaintiff had no way of knowing from the form that the certified letter was from the EEOC and that she was a pro se litigant proceeding under a remedial statute of broad social and economic import.

*See id.* at 11. The court declined to follow *Hornsby*'s bright line rule that delivery of Form 3849 alone could never begin the running of the period, however, stating that an unexplained failure to visit a mailbox for a long period of time might produce a different result. *See id.*

In *Watts-Means v. Prince George's Family Crisis Ctr*., 7 F.3d 40 (4th Cir. 1993), the Fourth Circuit reached a contrary conclusion and held that delivery of the notice to pick up certified mail rather than picking up the mail itself triggered the running of the period. In that case, there was a five-day delay between delivery of Form 3849 to the plaintiff and the plaintiff's actual receipt of the letter. The court was concerned that commencing the period when the plaintiff actually picked up the letter would allow a claimant to manipulate the period, pointing out that the plaintiff there "suspected that the letter about which she received notice from the Postal Service was a letter from the EEOC." *Id.* at 42 n.1. The court did adopt a lenient equitable tolling policy, however, which apparently would be available if a claimant did not know that the certified mail was the right-to-sue letter. *See id.* at 42.

The district court here held that the period began to run on the date the Postal Service left Form 3849 in Mr. Jackson's mailbox after its first attempt to deliver the certified mail containing Mr. Jackson's right-to-sue letter, despite the fact that Mr. Jackson received neither actual nor constructive notice of his right to

institute legal proceedings on that date. In so doing, the court stated that our decision in *Million*, 47 F.3d 385, was controlling, observing that *Million* cited *Watts-Means* as support for its holding. In *Million*, however, the right-to-sue letter itself was actually delivered to the plaintiff's residence and accepted by the plaintiff's wife, although the plaintiff himself did not read his mail for several days after delivery. *Id.* at 387. *Million* thus involved a constructive delivery and is factually distinguishable from the case before us. Its citation of *Watts-Means*, which is not a constructive delivery case, among the authorities listed as support for its holding is therefore not dispositive with respect to the circumstances here.

We have not had occasion to address directly the issue presented here. In *Williams v. Southern Union Gas Co.*, 529 F.2d 483 (10th Cir. 1976), the plaintiff received two letters from the EEOC, the first one informing him that he could request a right-to-sue letter and the second one the letter itself. The defendant argued that the first letter triggered the running of the limitation period but we disagreed, holding that the period did not commence until the claimant actually received the right-to-sue letter. *Id.* at 486-87. In *Biester v. Midwest Health Serv., Inc.*, 77 F.3d 1264 (10th Cir. 1996), we assumed that the limitation period began to run on the date the plaintiff actually picked up his certified mail rather than on the earlier receipt of the Form 3849 notices, *id.* at 1267, and we addressed whether equitable tolling applied on the basis of his mental illness. In *Witt v.*

*Roadway Express*, 136 F.3d 1424 (10th Cir. 1998), the EEOC sent the plaintiff a right-to-sue letter by regular mail on January 28, 1994, but the plaintiff stated that he did not receive it until the middle of March. We held that a genuine issue of fact existed as to when the plaintiff actually received the letter, and that the limitation period did not begin to run until that date, citing *Williams*. *See id.* at 1429. Although we recognized a presumption arose that the claimant received the letter five days after the January 28 date of mailing, we held that the presumption was rebutted by the plaintiff's evidence that he did not receive it until much later.

As these prior cases indicate, we are persuaded that starting the limitation period upon actual receipt of the right-to-sue letter is the view most in keeping with the language and purpose of the statute. The implementing regulation of the EEOC, *supra* at 3, provides that the ninety-day period begins to run upon receipt by a plaintiff of his authorization to bring a civil action under Title VII. We agree with the court in *Hornsby* that it makes little sense to begin the period for bringing such an action before the plaintiff knows he has the right to do so, especially since Congress clearly intended that a Title VII plaintiff have a full ninety days in which to commence his suit. We are not at liberty to shorten that period by a crabbed construction of the events that trigger a plaintiff's receipt of notice that he is authorized to sue. To the contrary, Title VII is broad remedial legislation that must be liberally construed. *See Gonzalez-Aller Balseyro v. GTE*

*Lenkurt, Inc.*, 702 F.2d 857, 859 (1983).

We conclude that Mr. Jackson did not receive notice of his right to sue for purposes of triggering the ninety-day limitation period until he actually received his right-to-sue letter.[1]  Consequently, the ninety-day period for filing this action did not begin to run until May 4 when Mr. Jackson picked up his right-to-sue letter at the post office.  His lawsuit was therefore timely filed.

The judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings.

---

[1]In so holding, we recognize there may be a case in which a plaintiff knows or has reason to suspect that a certified letter being held for pick-up is in fact a right-to-sue letter from the EEOC but delays obtaining it in order to manipulate the limitation period.  As our discussion of the record indicates, that is not the case here.  We therefore need not decide whether in those circumstances a court could properly decide that the limitation period begins at a point prior to physical receipt of the right-to-sue letter.