

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2007

# Wilson v. MVM Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-3204

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Wilson v. MVM Inc" (2007). *2007 Decisions.* Paper 1698.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1698

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3204

———

JOHN WILSON; FRANK KRYJER; DONALD JONES,

Appellants

v.

MVM, INC.; UNITED STATES MARSHAL'S SERVICE,
BY AND THROUGH ITS DIRECTOR BENIGNO REYNA;
JUDICIAL CONFERENCE OF THE UNITED STATES;
UNITED STATES DEPARTMENT OF JUSTICE

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cv-04514)
District Judge:  Honorable Harvey Bartle, III

———

Argued September 14, 2006
Before:  FUENTES, FISHER and McKAY,* *Circuit Judges*.

———

*The Honorable Monroe G. McKay, United States Circuit
Judge for the Tenth Circuit, sitting by designation.

(Filed January 29, 2007)

Andrew M. Smith (Argued)
Andrew Smith & Associates
644 Germantown Pike, Suite 1-B
Lafayette Hill, PA  19444
    *Attorney for Appellants, John Wilson,*
    *Frank Kryjer and Donald Jones*

Leslie Deak (Argued)
1200 G Street, N.W., Suite 800 (#099)
Washington, DC  20005
    *Attorney for Amicus-Appellant,*
    *United Government Security Officers*
    *of America International Union*

Jason M. Branciforte
Katherine A. Goetzl (Argued)
Littler Mendelson
1150 17th Street, N.W., Suite 900
Washington, DC  20036
    *Attorneys for Appellee, MVM, Inc.*

Marleigh D. Dover
U.S. Department of Justice
10th and Pennsylvania Avenue, N.W., Room 3127
Washington, DC  20530

2

Eric Fleisig-Greene (Argued)
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W., Room 7214
Washington, DC 20530
   *Attorneys for Appellees, U.S. Marshal*
   *Service, etc., Judicial Conference of the United*
   *States and U.S. Department of Justice*

———

## OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This case comes to us on appeal from the District Court's dismissal of claims and grant of summary judgment to the appellees in this case, the United States Marshal Service ("USMS"), the Judicial Conference of the United States, the United States Department of Justice (collectively "the federal defendants"), and MVM, Inc. ("MVM"). The appellants, John Wilson, Frank Kryjer and Donald Jones, filed suit against MVM and the federal defendants bringing claims under, *inter alia*, the Rehabilitation Act ("RA"), the Americans with Disabilities Act ("ADA"), the Due Process Clause and a plethora of state laws. They appeal the District Court's dismissal or grant of summary judgment only on the RA, ADA and procedural due process claims. For the reasons set forth below, we will affirm the District Court's decision.

3

## I.

The factual background of this case is one that is becoming familiar in the many district courts that have faced challenges by court security officers ("CSOs") to the process of medical qualification. Based on the statutory obligation to provide for the security of the United States Courts, 28 U.S.C. § 566(a), the USMS contracts with a number of private security companies, including its co-defendant in this case, MVM.

MVM inherited an already-existing force of CSOs from its predecessor, United International Investigative Services ("UIIS"), that included a binding collective bargaining agreement ("CBA") that was reached between UIIS and the labor union for the appellants in this case. The CBA includes a provision that allows for the discharge of employees "for just cause only." The CBA further provides an informal procedure for resolving grievances and a three-step formal procedure to be followed if the informal procedure fails to produce acceptable results.

The contract between MVM and the USMS explicitly requires MVM to "provide qualified CSOs" for the "complete safety and security of judges, court personnel, jurors, witnesses, defendants, federal property and the public." As part of the determination of whether a CSO is "qualified," the USMS has substantial medical standards that a CSO must meet. In 2001, the USMS, which reserved by contract the right to incorporate revised medical standards, implemented a new physical examination for CSOs, adding to the list of medically disqualifying conditions use of a hearing aid, diabetes and certain heart conditions.

4

John Wilson, Frank Kryjer and Donald Jones ("the appellants") were all hired by UIIS under the terms of the CBA and had been employed for a substantial number of years (11, 5 and 17 years respectively) as CSOs. Each was labeled medically disqualified by the USMS. The USMS found Wilson medically unfit because he suffered from diabetes and faired poorly on cardiac stress tests. Both Kryjer and Jones were termed medically disqualified based on their use of hearing aids.

Prior to their termination, the appellants were provided with notice of their medical disqualification and an opportunity to respond with documentation from their own doctors regarding their medical status. If USMS found that additional documentation insufficient to respond to its concerns, it contacted MVM, provided it with each CSO's official Medical Review Form, and instructed MVM to terminate the appellants as CSOs and provide a "replacement package." At the time the appellants were termed medically disqualified and subsequently removed from their posts as CSOs, MVM had no alternative positions available in the Eastern District of Pennsylvania. Therefore, in addition to being removed from their posts as CSOs, the appellants were discharged "for just cause" under their employment contract with MVM.

After their discharge, the appellants pursued various avenues to grieve their termination. Wilson's union filed a grievance with MVM regarding his termination, which was denied at the informal stage of the grievance procedure. Neither Wilson nor his union pursued the grievance through the remaining steps. Wilson also sent a letter to Deborah Skeldon, contracting officer for the USMS, contending that he was not

medically disqualified. Skeldon merely put the letter in a file. Wilson took no further steps with regard to the USMS.

After his termination, Kryjer's union also filed a grievance with MVM. As was the case with Wilson, Kryjer's grievance was denied at the informal stage and neither Kryjer nor his union took any steps to pursue the remaining grievance procedure. Neither made a complaint to the USMS.

Neither Jones nor his union pursued any remedies for his discharge until all three appellants filed formal charges against MVM with the Equal Employment Opportunity Commission ("EEOC") on July 29, 2003. Thereafter, the appellants were each issued a Notice of Right to Sue.

The appellants filed the current suit in the District Court on August 5, 2003, claiming violations of the RA, the ADA, the Age Discrimination in Employment Act, equal protection, and substantive and procedural due process, as well as several state law claims for breach of contract and concert of action. On April 1, 2004, the District Court granted the federal defendants' and MVM's motion to dismiss in part. Among its many rulings, the District Court held that it lacked subject matter jurisdiction to consider the appellants' RA claims against the federal defendants because, under the test articulated in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the USMS was not the appellants' "employer." The District Court also dismissed the appellants' procedural due process claim against the federal defendants, finding that the appellants had no property interest in continued employment with MVM and hence could not state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

6

After denying the appellants' motion for reconsideration, the District Court rejected the appellants' remaining claims on May 24, 2005, granting summary judgment to the federal defendants and MVM. The District Court further elucidated its reasons for dismissing the procedural due process claims against the federal defendants, stating that even if the appellants had a property interest in continued employment with MVM, the USMS was not the proximate cause of the loss of that property interest, or, alternatively, that the USMS had provided sufficient process. The District Court then proceeded to grant MVM summary judgment on the appellants' due process claim against it, because, even if MVM was an arm of the government, the appellants had failed to make use of the process that was available to them, thereby barring their claims. It also found that MVM did not violate the ADA because MVM did not believe the appellants were impaired within the meaning of the statute.

This appeal followed.

**II.**

The appellants invoked the District Court's jurisdiction under 28 U.S.C. §§ 1331 and 1346. We exercise jurisdiction over their appeal from the District Court's dismissal and grant of summary judgment pursuant to 28 U.S.C. § 1291. We exercise *de novo* review over a District Court's dismissal. *A.D. Bedell Wholesale Co. v. Phillip Morris, Inc.*, 263 F.3d 239, 249 n.25 (3d Cir. 2001). When reviewing dismissals under 12(b)(6), "we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). We review a district court's grant of summary judgment *de novo*, *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005), applying the same test the district court would have used initially. *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

The appellants' first argument on appeal is that the District Court improperly dismissed their RA claims for lack of jurisdiction. Section 501 of the RA allows recovery of monetary damages by employees of the federal government who have suffered disability discrimination. Much has been written on the issue of whether an individual who is technically employed by a private employer can also be a federal employee for the purposes of the RA. Courts have struggled over what test to adopt to determine whether this kind of joint employment existed. Some courts have adopted the "joint employment test," which we have employed in other contexts. *See Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117 (3d Cir. 1982); *Graves v. Lowry*, 117 F.3d 723 (3d Cir. 1997). The "joint employment test" asks whether "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees

8

who are employed by the other employer." *Browning-Ferris*, 691 F.3d at 1123. Other courts, including the District Court in this case, have adopted the "hybrid test," based on the Supreme Court's decision in *Reid*, 490 U.S. 730, which balances thirteen factors to determine whether the federal agency had the right to control the "means and manner" of the employee's performance.

Most recently, the District Court for the District of Columbia adopted the use of the joint employer test and determined that CSOs are federal employees for the purposes of § 501. *Int'l Union v. Clark*, No. 02-1484, 2006 U.S. Dist. LEXIS 64449 (D.D.C. Sept. 11, 2006). In doing so, it has joined a number of other courts that have made similar determinations, albeit in unreported cases. *See*, *e.g.*, *Strolberg v. Akal Security*, No. 03-cv-0004-s-DOC, 2005 US Dist. LEXIS 35373 (D. Id. Jan. 19, 2005); *Gunnels v. Akal Security, Inc.*, No. V-02-132 (S.D. Tex. Feb. 19, 2004); *Walton v. U.S. Marshall Service*, No. 03-cv-01469 (N.D. Cal. Jan. 15, 2004). However, we need not reach the issue of which test to employ to determine whether the CSOs were federal employees or whether the District Court's determination was appropriate under the *Reid* test. The appellants' claims fail on exhaustion grounds.

## IV.

Section 794a(a)(1) of Title 29 provides the appropriate pathways by which a plaintiff may pursue an RA claim, adopting the procedures set forth in Title VII of the Civil Rights Act:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of

9

sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take a final action on such complaint.

29 U.S.C. § 794a(a)(1). The incorporation of the Civil Rights Act includes the incorporation of the prerequisite exhaustion of administrative remedies. Before an aggrieved employee may bring an RA claim in court against a federal employer, he must file a claim with the EEOC. 29 C.F.R. § 1614.105. Only after filing this initial claim may he seek to vindicate his rights in front of a judge and jury.

As in other contexts, under the RA, exhaustion of administrative remedies serves to "promote administrative efficiency, 'respect[] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 370 (3d Cir. 1986)). Therefore, a court need not pass upon the merits of a plaintiff's substantive claim until it satisfies itself that the claim is properly before it, including determining whether the plaintiff properly exhausted administrative remedies.

The parties before us do not contend that exhaustion is not a requirement of the RA or that the appellants filed the appropriate claims against the USMS with the EEOC. It is clear

10

from the statute and the law of this Court that a plaintiff must exhaust administrative remedies before bringing a claim under the RA. *Spence v. Straw*, 54 F.3d 196, 201 (3d Cir. 1995); *see also Freed v. Consolidated Rail Corp.*, 201 F.3d 188, 191 (3d Cir. 2000). It is also clear that the appellants did not fully exhaust their administrative remedies. Rather, the parties dispute the nature of the exhaustion requirement. At oral argument the appellants claimed that any further use of the administrative process would have been futile; the federal defendants have claimed that exhaustion is a jurisdictional requirement that is not subject to a futility exception.

The parties' arguments bring to bear the distinction between prudential exhaustion and jurisdictional exhaustion. A prudential exhaustion requirement is generally judicially created, aimed at respecting agency autonomy by allowing it to correct its own errors. *Robinson*, 107 F.3d at 1020. Because of its nature, prudential exhaustion can be bypassed under certain circumstances, including waiver, estoppel, tolling or futility. *See id.* at 1021-22; *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002). Jurisdictional exhaustion, however, is a prerequisite to a court's subject matter jurisdiction. Regardless of whether there is a compelling reason a plaintiff failed to exhaust, a court is without subject matter jurisdiction to hear the plaintiff's claim. *Nuhuis v. Reno*, 204 F.3d 65, 69 (3d Cir. 2000). The question that now confronts us is whether the RA's exhaustion requirement is prudential or jurisdictional, thus barring appellants' claims even in the face of futility claims.

In *Zipes v. Trans World Airlines, Inc.*, the Supreme Court ruled that timely exhaustion of Title VII administrative remedies was not jurisdictional. 455 U.S. 385, 393 (1982). It is a

11

"requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* This Court has repeatedly held the same. In *Robinson*, we stated:

> Although the district court in this case described its preliminary evaluation as "jurisdictional," this court has previously determined that questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction.

*Robinson*, 107 F.3d at 1021; *see also Hornsby v. U.S. Postal Service*, 787 F.2d 87, 89 (3d Cir. 1986) ("The time limits in Title VII are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction.").

A number of our sister circuits who have commented upon the nature of Title VII exhaustion requirements have read *Zipes* narrowly, finding that it applies only to cases involving failure to timely exhaust. While failure to timely exhaust is prudential, they have held that complete failure to exhaust is a jurisdictional bar. *See Sizovah v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002) (distinguishing between failure to timely exhaust and complete failure to exhaust, finding the latter to be a jurisdictional bar); *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 137 (4th Cir. 1995) ("Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust the administrative procedures . . . ."); *Bullard v. Sercon Corp.*, 846 F.2d 463, 468 (7th Cir. 1988) (internal citations omitted) ("But

12

Title VII's strong policy of encouraging conciliation, and of giving states that have anti-discrimination laws a chance to deal with discrimination before federal intervention, argues for treating Title VII's exhaustion requirements as jurisdictional.").

The federal defendants argue that our cases follow the reasoning of these circuits, and that we should see the exhaustion requirement as jurisdictional. They argue that *Robinson* and *Hornsby* dealt "solely with whether exhaustion was timely, not whether an employee had failed to exhaust administrative remedies at all." However, the federal defendants' argument fails to take into consideration this Court's decision in *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984). In that case, the plaintiff did not pursue any administrative remedies before filing her suit. *Id.* at 236. While we ultimately disposed of the case on different grounds, we clearly articulated the non-jurisdictional nature of administrative remedies. Based on the Supreme Court's holding in *Zipes*, we stated that the plaintiff, who had pursued no administrative remedies, was not jurisdictionally barred. Rather, should we decide on the exhaustion grounds alone, we would have to remand to the district court to consider the doctrines of waiver, estoppel and tolling. *Id.* at 236-37.

Therefore, we have clearly rejected a distinction between failure to timely exhaust and complete failure to exhaust in Title VII cases. We said as much in *Robinson*: "Moreover, in Title VII cases courts are permitted in certain limited circumstances to equitably toll filing requirements, even if there has been a complete failure to file, which necessarily precludes characterizing such requirements as jurisdictional." *Robinson*, 107 F.3d at 1021; *see also Williams v. Runyon*, 130 F.3d 568,

13

573 (3d Cir. 1997) ("In Title VII actions, failure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations.").

In its recent opinion in *Spinelli*, the D.C. Circuit, while recognizing the nonjurisdictional nature of Title VII's exhaustion requirements, still found that failure to exhaust administrative remedies in the RA context was jurisdictional. The D.C. Circuit pointed out that § 794a(a)(1) states that the statute "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint.'" *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). Accordingly, because "a court may not read futility or other exceptions into statutory exhaustion requirements" the court found the exhaustion requirement was jurisdictional. *Id.*

We are unpersuaded by this line of argument. As an initial matter, the fact that an exhaustion requirement is contained within statutory language does not mandate its jurisdictional nature. In *Buck v. Hampton Township School District*, 452 F.3d 256 (3d Cir. 2006), we found that the exhaustion requirements of the ADA were prudential, despite the fact that they were statutory prerequisites to filing suit. *Id.* at 262. Further, it seems unlikely that, although explicitly adopting Title VII's exhaustion requirements, Congress intended to change their nature from prudential to jurisdictional. We therefore find that *Waiters* is controlling, and the exhaustion requirements of the RA are prudential.

However, merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will be excused in only a

14

narrow set of circumstances. At oral argument, appellants claimed that this case presented one of those narrow sets of circumstances and argued for application of the futility exception. In order to invoke the futility exception to exhaustion, a party must "provide a clear and positive showing" of futility before the District Court. *D'Amico*, 297 F.3d at 293. This is the first time the appellants have made this futility argument with regard to their claim against the federal defendants. In their complaint, the appellants alleged that they had attempted to appeal their termination and, because of a poor response to their attempts, any further efforts to exhaust administrative remedies would have been futile. While it is true that the appellants made some attempts, their failed attempts were directed at MVM, not the USMS. The appellants never brought a claim against the USMS before the EEOC and have made no argument as to why they failed to do so. They have not brought forward any evidence of futility, let alone the "clear and positive showing" we require. *Id*. at 293. Therefore, the District Court's dismissal of their RA claims was appropriate.

## V.

In addition to claims under the RA, the appellants also pursued claims against the federal defendants and MVM under 42 U.S.C. § 1983, claiming a violation of procedural due process. The appellants claim that the provision of their CBA that prohibited termination without just cause gave them a constitutionally protected property interest of which they were deprived when the USMS found them medically disqualified. The District Court dismissed the claim as to the federal defendants based on its finding that, even if the appellants had a protected property interest, the USMS was not the proximate

15

cause of the loss of that property interest, or, alternatively, they were granted sufficient process. As to MVM, the District Court found that, even if MVM was considered an arm of the government, the appellants failed to take advantage of the process provided to them by the CBA.

As correctly noted by the District Court, the appellants' due process claims against MVM are without merit. Before bringing a claim for failure to provide due process, "a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Even if we were to determine that MVM was an arm of the government, the appellants' due process claims against MVM must fail because they failed to take advantage of the grievance process provided to them in the CBA. As in *Alvin*, these appellants were provided a multi-step grievance process. The CBA required first that terminated employees seek an informal review of their termination. If the informal review was not successful, terminated employees could proceed up through three additional steps and then to arbitration. After being unsuccessful at the first step, however, Wilson and Kryjer ceased pursuing their claims. Jones filed no grievance at all. Because there is process on the books that "appears to provide due process" and the appellants failed to take advantage of that process, they cannot now "use the federal courts as a means to get back what [they] want[]." *Id.*

"Where access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim." *Id.* at 118. Aside from letters denying their attempts at informal review, the

16

appellants have failed to provide clear evidence that use of the procedures articulated in the CBA would have been futile or was otherwise "absolutely blocked." *Id.* For these reasons, the District Court rightly granted MVM summary judgment on the appellants' due process claims.

The appellants' claims against the federal defendants cannot be so easily disposed of. While not explicitly reaching the issue of whether the appellants had a constitutionally protected property interest, in its opinion on the appellants' motion to reconsider, the District Court granted summary judgment for the federal defendants based on its finding that the USMS's determinations of medical disqualification did not proximately cause MVM to terminate appellants' employment or, in the alternative, that the USMS provided appellants sufficient process. We find that the appellants had a protected property interest that was affected by the USMS. However, we will affirm the District Court based on the determination that the USMS provided the appellants with sufficient process.

In order to bring a claim for violation of procedural due process based on discharge from a job, a claimant must prove that he had a constitutionally protected property right in continued employment. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In the governmental context, while at-will employment is not generally considered a property interest, *see Thomas v. Hammonton*, 351 F.3d 108, 113 (3d Cir.

17

2003), employment contracts that contain a "just cause" provision create a property interest in continued employment. *See Kelly v. Sayerville*, 107 F.3d 1073, 1077 (3d Cir. 1997). The question currently before us is whether a just cause provision in a contract with a private employer creates a property interest in that position with which the government cannot interfere without due process of law.

While we have not spoken on this specific question, a number of courts to have addressed the issue have found that private employees covered by a just cause provision are entitled to due process protections when the government interferes with their employment. Basing their decisions on the Supreme Court's reasoning in cases such as *Greene v. McElroy*, 360 U.S. 474 (1959), these courts have determined that "[w]here the independent source of a property interest is a private contract, the state cannot transgress on the claim of entitlement to continued employment without due process of law." *Stein v. Bd. of Ed.*, 792 F.2d 13, 16 (2d Cir. 1986); *see also Merritt v. Mackey*, 827 F.2d 1368 (9th Cir. 1987).

In *Stein*, a bus driver employed by a private company was terminated after the Board of Education determined that he lacked good moral character, as required by the private company's contract with the Board of Education. Stein, like the appellants in this case, had a "good cause" provision in his contract with his private employer. The Second Circuit found that this "good cause" provision coupled with the Board of Education's direct influence on Stein's firing created a sufficient property interest. "The 'good cause' for the discharge was supplied by the state, which by disqualifying the employee foreclosed him from doing his job. Accordingly, Stein's 'claim

18

of entitlement' arose from his contract with [the bus company.]" *Id*. at 17. After further finding that Stein received limited notice and an insufficient hearing before the Board of Education when it determined his moral fitness, the Second Circuit held that Stein had presented an appropriate claim for relief under the Fourteenth Amendment's procedural due process requirement. *Id*.

We find the reasoning of this case persuasive and believe that a private employment contract with a "just cause" termination clause can create a constitutionally protected property interest. Applying that reasoning to this case, we find that the appellants had a property interest in their continued employment with MVM. The CBA under which the appellants worked contained a clause that allowed MVM to discharge them "for just cause only." MVM has specifically stated that it discharged the appellants because of the USMS's determination that they were medically disqualified. Thus, just as in *Stein*, "[t]he [just cause] for the discharge was supplied by the state, which by disqualifying the employee[s] foreclosed [them] from doing [their] jobs." *Id*.

The federal defendants argue that even if the appellants did have a property interest in continued employment with MVM, it was not the USMS's determination that proximately caused the deprivation of that property interest. They argue that the USMS's medical determination was, at best, an indirect cause of the appellants' termination, as MVM could have employed them in some other capacity than CSOs. This argument fails to take into consideration that MVM had inherited the CSO workforce from the previous private employer and that the appellants had been working as CSOs for far longer

19

than MVM had the contract with the USMS. As in *Greene*, where the government's refusal to grant an engineer security clearance led directly to his firing by a private engineering contractor, the USMS's determination that appellants were medically disqualified led directly to their termination. *Greene*, 360 U.S. at 483.[1]

As the appellants have shown that they have a property interest, we must determine whether there was sufficient process afforded before they were deprived of that property interest. There is no rote formula for sufficient protections under the Due Process Clause. Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). At a minimum, due process requires notice and a hearing. *Reichley v. Pa. Dept. of Agriculture*, 427 F.3d 236, 247 (3d Cir. 2005). However, when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on

---

[1]This accords with our reasoning in cases involving the state action doctrine, where a state's involvement in private action in a highly regulated industry can rise to the level of "state action" for a procedural due process claim. *See Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 596-99 (3d Cir. 1979) (holding under the state action doctrine that state racing commission's findings that a driver was violating state racing laws was the impetus behind private racetrack cancelling his lease, implicating the due process clause and requiring the state to provide notice and hearing before making such determinations).

the balancing of three interests: (1) the private interest at stake, (2) the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide, and (3) the government's interest. *Mathews*, 424 U.S. at 334-35.

In the opinion accompanying its May 24, 2005 grant of summary judgment, the District Court reiterated that the USMS provided the appellants fair notice that they may be medically disqualified and provided them with an opportunity to respond and present evidence to the contrary. The District Court's conclusions are correct. The appellants had a clear interest in continued employment, which must be balanced against the government's interest in providing healthy, physically qualified security to protect its court houses and employees. After the appellants were termed medically disqualified, but before they were terminated, they were provided with notice of their medical disqualification and offered an opportunity to respond with medical documentation from their own doctors regarding their ability to perform their positions. While this is not a traditional hearing, the process afforded the appellants is sufficient given the balance of their interest in maintaining employment and the government's interest in security. A more rigorous process would not significantly enhance the accuracy of the medical qualification process. *Mathews*, 424 U.S. at 335. Therefore, the District Court correctly determined that the appellants were provided sufficient process.[2]

--------------------------------------------------

[2]Further, we agree with the District Court that the appellants could not have recovered monetary damages under

21

## VI.

The appellants' final contention that the District Court erred in granting MVM summary judgment on the appellants' ADA claims is without merit. In order to prevail on a claim under the ADA, a claimant must prove that he is disabled within the meaning of the statute, proving that he has a physical impairment that limits a major life activity, has a record of such an impairment, or is "regarded as" having such an impairment. 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B). The appellants cannot prove that their impairments are not mitigated by corrective measures, thus barring a claim that they have impairments that limit a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487 (1999). Therefore, they can only prevail if they show that MVM "regarded" them as being impaired. To meet this standard, MVM must have "mistakenly believed that [the appellants] have a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Id.* at 489. It is insufficient for the appellants to show that MVM thought they were, in some way, impaired. Rather, the appellants must show that MVM thought they were disabled "within the meaning of the statute." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002).

---

their § 1983 claim against the federal defendants. They would have been limited to declaratory and prospective injunctive relief.

22

The undisputed evidence shows that MVM did not consider the appellants in any way disabled and would have reinstated them immediately if the USMS would have determined the appellants were medically qualified. As a matter of law, MVM did not regard the appellants as impaired within the meaning of the ADA.

## VII.

For the reasons set forth above, we will affirm the District Court's dismissal of the appellants' RA claims and due process claims against the federal defendants, and the appellants' ADA and due process claims against MVM.