**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLAUDIA CROY,

      Plaintiff-Appellant,

v.

COBE LABORATORIES, INC., a
corporation; SORIN BIOMEDICA;
COBE CARDIOVASCULAR, INC.;
and COBE CARDIOVASCULAR
DIVISION OF SORIN BIOMEDICA,

      Defendants-Appellees.

No. 02-1366

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 00-D-1976 (MJW))**

---

John R. Olsen of Olsen & Brown, L.L.C., Niwot, Colorado, for Plaintiff-
Appellant.

Kris J. Kostolansky of Rothgerber Johnson & Lyons LLP, Denver, Colorado
(Susan S. Sperber with him on the brief) for Defendants-Appellees Sorin
Biomedica, COBE Cardiovascular, Inc., and COBE Cardiovascular Division of
Sorin Biomedica.

K. Preston Oade, Jr., of Holme, Roberts & Owen, LLP, Denver, Colorado, for
Defendant-Appellee COBE Laboratories, Inc.

---

Before **HENRY** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

_____

**McKAY**, Circuit Judge.

_____

This is an appeal of an action alleging discrimination under the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 (1995); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and a breach of contract. Plaintiff-Appellant, Ms. Claudia Croy, alleges that her former employers (collectively "Appellees") discriminated against her because of her gender and failed to accommodate her multiple sclerosis disability. Appellant also alleges that Appellees breached a contract in which she was promised a promotion.

The district court initially granted summary judgment in favor of Appellees on the discrimination claim, concluding that the claim was time-barred because no adverse action occurred during the limitations period and also that the continuing violations doctrine could not save the claim. The district court then granted summary judgment on the disability claim, concluding that Appellant had not alleged an impairment of a major life function. Furthermore, the district court denied summary judgment on a retaliation claim (which has not been pursued by Appellant) and the breach of contract claim, concluding that genuine issues of material fact existed.

Pursuant to a Motion for Clarification by Appellees, the district court reversed its denial of summary judgment on the retaliation claim and granted summary judgment to Appellees. Consequently, the district court granted the Motion for Clarification and stated:

> In accordance therewith, the Court's Order of May 3, 2002, which granted in part and denied in part Defendant's Motions for Summary Judgment is REVERSED to the extent that it denied summary judgment on the retaliation claim. The record should reflect that Defendant's Motions for Summary Judgment are now GRANTED as to all claims, including the retaliation claim.

Order of August 6, 2002, at 7.

It is unclear whether the district court intended to reverse its prior decision to deny summary judgment on the contract claim or whether it simply forgot that it had denied summary judgment on that claim. In any case, the Order of August 6, 2002, resulted in a final disposition of all of Appellant's claims. Appellant filed a timely appeal, seeking review of the grant of summary judgment on the discrimination, disability, and contract claims.

We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. Dye v. United States, 121 F.3d 1399, 1403-04 (10th Cir. 1997); Richmond v. ONEOK, 120 F.3d 205, 208 (10th Cir. 1997). However, the nonmovant must establish, at a minimum, "an inference of the existence of each

-3-

element essential to the case." Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994).

In her Title VII discrimination claim, Appellant asserts that she was repeatedly denied promotions because of her gender. Specifically, she alleges that she was first denied a promotion in 1988 because of her gender. Following the denial of that promotion, Appellant filed an EEOC charge and received a "right to sue" letter, but did not file suit. Appellant alleges further specific instances of failure to promote in July 1996, January 1998, June 1999, June 2000, and January 2001. She also claims that she was continually denied promotions even after the specific denials.

To avoid summary judgment on the Title VII discrimination claim, Appellant must show that she filed an EEOC charge within 300 days after the alleged unlawful discrimination. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002). In addition, Appellant must show that she filed suit within ninety days of receipt of the determination letter from the EEOC. See Jackson v. Continental Cargo-Denver, 183 F.3d 1186, 1187 (10th Cir. 1999). These timing requirements are prerequisites to a civil suit. See id.

As the district court explained, it is undisputed that Appellant did not file an EEOC complaint within 300 days of the decisions not to promote her in July 1996 and January 1998. It is also undisputed that Appellant did not file a civil

suit within ninety days of receiving her "right to sue" letter in 1989. However, Appellant argues that her claims are saved by the continuing-violations doctrine.

In this circuit, we once held that in certain circumstances the claims of discrimination alleging incidents which occurred outside the time limitations may survive if the various acts constitute a continuing pattern of discrimination. Purrington v. University of Utah, 996 F.2d 1025, 1028 (10th Cir. 1993) (abrogated by Morgan). We originally held that the continuing-violations doctrine may be invoked either by showing "(1) a series of related acts taken against a single individual, one or more of which falls within the limitations period, or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period." Id. The Supreme Court changed this rule somewhat in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), after the district court's initial ruling in this case but prior to its final order. The Supreme Court explained that discrete acts of discrimination are not actionable if they fall outside the limitations period, even if they are related to acts which fall within the limitations period. Id. at 114-15. The Court stated that since discrete acts are easily identifiable and individually actionable, acts that occurred outside of the limitations period, even though related to those occurring within the period, are not actionable. Id. at 114. The Court specifically mentioned a failure to promote as the type of discrete act of discrimination which is only actionable if it

occurred within the limitations period. Id. However, the Court also recognized that certain discrimination claims, such as hostile environment claims, "are different in kind from discrete acts. Their very nature involves repeated conduct." Id. at 115. In such cases, the Court explained, "[t]he 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. In such cases, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117.

Appellant has alleged specific instances of discrimination in the form of failures to promote her in particular circumstances. We agree with the district court that, to be actionable, these instances must have occurred within the limitations period. However, while Appellant has not specifically alleged a hostile work environment, she has alleged the existence of a "glass ceiling" on the advancement of female employees. This "glass ceiling" claim is more akin to a hostile environment claim than a discrete act claim. Appellant alleges that there was a *continuous* failure to promote her, which "did not involve discrete acts that could or should have triggered any obligation of Croy to complain to the EEOC." Aplt. Br. at 33.

Because this claim is akin to a hostile environment claim, it is appropriate to look to the entire time period of alleged discrimination in order to determine liability. As the Supreme Court explained in Morgan, "the statute [does not] bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. at 113.

Nevertheless, the Court still requires that, even in hostile environment claims, some (or at least one) of the component acts underlying the claim must occur within the limitations period. The district court concluded that Appellant had not shown any specific act of discrimination within the limitations period. As the district court explained, "[t]he actual alleged failures to promote occurred in 1996 and 1998, and '[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.'" Order of May 3, 2002, at 8 (quoting Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir. 1992)).

Appellant contends that she suffered discrete failures to promote in June 1999, June 2000, and January 2001 in connection with regularly-scheduled "Wage Reviews." Aplt. Br. at 34. However, Appellant has not shown that these performance evaluations resulted in "a significant change in employment status, such as hiring, firing, failing to promote, a reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998). She has

merely shown that she received regularly scheduled "Wage Reviews" from which she received wage increases. She has not shown that the evaluations were failures to promote her.

Because Appellant has failed to allege any actionable act of discrimination within the limitations period, the doctrine of continuing violations does not save her untimely claims. Therefore, summary judgment on Appellant's discrimination claim was not in error.

Appellant also challenges the grant of summary judgment on the disability claim. She was diagnosed with multiple sclerosis in the Fall of 1999. Aplt. App. at 565. Appellant describes her symptoms as including headaches, dizziness, vertigo, and extreme fatigue. Because of these symptoms, Appellant frequently had to miss work, often with little or no notice beforehand. Appellant alleges that her multiple sclerosis constitutes a disability under the ADA and that her employers discriminated against her because of her disability. Appellant now appeals the district court's determination that Appellant is not disabled within the meaning of the ADA because she did not demonstrate the substantial impairment of a major life activity.

To prevail on her ADA claim, Appellant must show that (1) she is disabled within the meaning of the ADA, (2) she is able to perform her essential job functions with or without reasonable accommodation, and (3) Appellees

discriminated against her in their employment decisions because of her alleged disability. See Doyal v. Oklahoma Heart, Inc., 213 F.3d 492, 495 (10th Cir. 2000). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999).

In support of her claim that her multiple sclerosis limited her major life functions, Appellant argues that she was frequently forced to take unscheduled leave, was frequently unable to lift heavy objects, could not bear "sustained exertion," and could not care for her children, complete household chores, or cook for her family. Appellant alleges that when she is suffering fatigue all of her life's activities are halted.

The district court examined each of the alleged limitations on major life functions and discussed each in turn. Without repeating the analysis conducted by the district court, we agree with the district court that Appellant has not shown the substantial impairment of a life activity. Assuming without deciding that working is a major life activity, Appellant has not shown that her limitations prohibit her from completing her job or that she is unable to perform any of the life activities completely. We are sympathetic with Appellant's impairment and presume that she often experiences the symptoms of multiple sclerosis to the

-9-

extent that she is often temporarily unable to function as the average person would. However, she has failed to show that she is unable to work. She has merely shown that she has had to take many unscheduled absences. She has not even shown that she was unable to perform her job at an acceptable level. In fact, Appellant claims that she maintained a satisfactory level of job performance such that she should not have received negative performance reviews. Therefore, there does not appear to be any factual issue as to whether Appellant suffers from a substantial limitation of a major life activity.

For these reasons and those stated by the district court, we agree that Appellant has failed to establish that her impairment substantially limited a major life activity. Therefore, Appellant is not disabled within the meaning of the ADA, and summary judgment on the disability claim was appropriate.

Appellant also appeals the grant of summary judgment on the breach of contract claim. In 1996, Appellant was denied a promotion and wrote a letter to her supervisors complaining of gender discrimination. The parties seem to agree that this complaint was resolved by an agreement (Career Development Plan) between Appellant and COBE Laboratories, Inc. ("COBE Labs"). The Plan provided that "[u]pon acceptable completion of the [training detailed in the Plan] and demonstration of proficiency with ASME Y14.5M, Claudia can expect a promotion to T-16." Aplt. App. at 597-98.

At the time the Plan was created, Appellant had a pay grade of T-14. By the time Appellant had completed the training required by the Plan, the company had reorganized its pay grade system, and there is some dispute as to whether Appellant was actually promoted to a higher pay grade than T-14 or whether she was simply given the new equivalent of the T-14 pay scale.

In its first order resolving the summary judgment motions, the district court denied summary judgment on the breach of contract claim. The court concluded that the statement in the Plan was an enforceable contractual obligation but that genuine issues of material fact existed as to whether those obligations were fulfilled and whether the obligations included a promise of a raise in connection with the promotion. See Order of May 2, 2002, at 19-20. However, upon reconsideration of the retaliation claim, and without discussing the contract claim at all, the district court declared that "Defendants' motions for Summary Judgment are now GRANTED as to all claims, including the retaliation claim." Order of August 6, 2002, at 7.

We agree with the district court's initial conclusion that genuine issues of material fact exist with respect to the contract claim. It is unclear whether Appellant received a promotion as promised in the Plan or simply was given a lateral reclassification. It is also unclear whether the Plan contemplated a raise in pay. Furthermore, we note with interest that Appellees contended at oral

argument that the contract claim should not be remanded because the claim is *de minimus*. It is interesting that they would fight so hard to defend a claim they believe to be *de minimus*.

Because the district court is familiar with the facts of the case, has previously determined that a factual issue exists, and Appellees have conceded that the claim is *de minimus*, this issue should be remanded to the district court for further proceedings. At the very least, the district court should provide an explanation for granting summary judgment on the contract claim. For these reasons, we reverse the grant of summary judgment on the contract claim and remand it for further proceedings.

Finally, Appellant challenges the district court's grant of summary judgment contained in its Order of December 18, 2001, in favor of Appellee Sorin Biomedica ("Sorin"). Aplt. App. at 185-93. The undisputed facts indicate that Appellant was originally employed by COBE Labs. In May 1999, Sorin purchased one of COBE Labs' subsidiaries, COBE Cardiovascular, Inc. ("COBE CV"). Certain COBE Labs' employees, including Appellant, were transferred to COBE CV, then a subsidiary of Sorin. Later, Sorin and SNIA, an Italian corporation, merged, and Sorin transferred its ownership of COBE CV to Dideco, S.p.A, an Italian corporation and wholly owned subsidiary of SNIA. Based on these facts, the district court concluded that Appellant had not shown any

evidence that Sorin was her employer or that Sorin was a party to the contract. On appeal, Appellant has alleged essentially the same facts as outlined above and provided no additional evidence that Sorin is her employer. Her only argument is that even after the transfer to Dideco her employer was "COBE Cardiovascular, a division of Sorin Biomedica." However, Sorin has shown that this is merely a trade name and that COBE CV has no relationship to Sorin. Appellant has not shown otherwise. Summary judgment in favor of Sorin was appropriate.

AFFIRMED in part; REVERSED and REMANDED in part.