**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

VICTOR G. DAVILA,

        Plaintiff-Appellant,

v.

QWEST CORPORATION, INC.,
formerly known as U S West,

        Defendant-Appellee.

No. 03-1216
(D.C. No. 01-Z-272 (OES))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **MURPHY** , Circuit Judge, and **CAUTHRON** ,**
Chief District Judge.

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**     The Honorable Robin J. Cauthron, Chief District Judge, United States
District Court for the Western District of Oklahoma, sitting by designation.

Plaintiff Victor Davila appeals from the entry of summary judgment for defendant Qwest on his claims under Title VII, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* "We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). For reasons discussed below, we affirm the district court's determination that plaintiff failed to establish a triable issue of discrimination on the basis of race under Title VII or disability under the ADA.

Plaintiff, an Hispanic male, worked for defendant as an operator for twenty years. When that job phased out, he took a new position as a network technician and was transferred to a facility in Silverthorne, Colorado, which he claims was a racially hostile workplace. During this period, in January and September of 1998, plaintiff was involved in two incidents triggering final warnings of dismissal for workplace violence. Such warnings authorize an employee's immediate discharge upon further violation of company policy for up to a year. Following the second incident, plaintiff took a temporary disability leave and saw psychiatrist Marjorie Lavin and therapist David Dowell. Doctor Lavin attributed plaintiff's behavior to a type of bipolar disorder induced by medication–in this case the Prozac plaintiff

had been taking for depression since late 1997 on the prescription of his family physician. Doctor Lavin treated plaintiff for two months, discontinuing the Prozac in favor of Depakote, and then released him to work without restrictions. She testified that she felt the specification of work restrictions, if any, was a matter for plaintiff and his therapist. There is nothing in our record indicating that David Dowell imposed or suggested any work restrictions.

Plaintiff expressed concern about returning to Silverthorne, however, and was reassigned to a facility in Denver, where he reported in December 1998, after completing a one-month suspension for the September incident. He testified that he did not encounter any harassment or discrimination while working in Denver. In April, plaintiff backed a company truck into a vehicle in a customer's parking lot. When later confronted by the vehicle's owner, plaintiff said he would pay for the damage personally and did not report the accident. The company nevertheless learned of the accident from the vehicle owner. Based on the unreported accident and the final warning of dismissal in plaintiff's file, the company fired plaintiff. Three months later, on July 21, 1999, he filed a claim with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission (EEOC). After this claim was rejected and the EEOC issued a right-to-sue letter, plaintiff commenced this action in district court.

Plaintiff alleges under Title VII that he was subjected to a racially hostile work environment during his time in Silverthorne and then received a racially discriminatory discharge following the April incident in Denver. He alleges under the ADA that defendant also discriminated against him on the basis of his bipolar disability and that he ultimately lost his job in part as a result of such discrimination. The district court relied on several alternative bases for rejecting these claims. We affirm on the particular grounds discussed below and thus need not address the additional, legally redundant deficiencies identified by the district court.

## Title VII Claims

Timely pursuit of administrative redress is a prerequisite to filing suit under Title VII. *Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1138 (10th Cir. 2003). Colorado is a "deferral state" that invests "a State or local agency with authority to grant or seek relief [under Title VII]" and, therefore, plaintiff's administrative claim was governed by the 300-day limitations period specified in 42 U.S.C. § 2000e-5(e)(1). *See Bennett v. Quark, Inc.*, 258 F.3d 1220, 1225 n.2 (10th Cir. 2001), *overruled on other grounds as explained in Boyer,* 316 F.3d at 1140. The district court held that plaintiff's hostile-environment claim rested on incidents at Silverthorne that occurred more than 300 days before July 21, 1999, and, thus, was time-barred.

Plaintiff insists the district court overlooked two incidents that occurred within the 300-day window and invokes the continuing-violation doctrine to tie his stale hostile-environment allegations to these more recent incidents. We reject both steps of this argument.

In his deposition, plaintiff conceded that he suffered no racial harassment in Denver. Thus, after noting that plaintiff did not return to work at the Silverthorne facility after taking disability leave in early September 1998–more than 300 days before he filed his administrative claim–the district court concluded that plaintiff's own testimony showed that his hostile work environment claim was time-barred. In a hindsight-aided effort to circumvent the legal consequences of his factual concession, plaintiff argues that although he never returned to work at Silverthorne after the September incident, the incident had led to his November 1998 suspension (upon his release for work) within the 300-day period. The problem with this tack is that plaintiff did not allege in his complaint, aver in an affidavit, assert in his deposition, or claim in the Fed. R. Civ. P. 26(f) scheduling order that his suspension was racially motivated. Rather, he complained only that the union was not timely notified and that the underlying confrontation (with an Hispanic friend and coworker) was not physically violent. He cannot save his time-barred hostile-environment claim now by trying to tie his suspension for a racially neutral incident to his allegations of harassment in the workplace.

His effort to use his April 1999 termination for the same purpose falters for similar reasons. His termination was based on the warning of dismissal issued for the September incident and his subsequent misconduct regarding the unreported accident in Denver. As we have just noted, the former has no substantiated link to the alleged harassment in Silverthorne, and the latter involves an analytically discrete act patently unconnected with such harassment. *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-18 (2002) (distinguishing discrete acts from interconnected practices constituting continuing violation).

Plaintiff also argues that, in any event, his termination is actionable as an example of disparate treatment, because a white employee, Paul Teel, was not terminated for an accident with a company vehicle. The district court held that plaintiff had failed to establish that Teel was similarly situated. We agree. Teel's affidavit shows that, unlike plaintiff, he did eventually inform the company about his accident. And there is no evidence that Teel was under a final warning of dismissal at the time. The district court properly compared relevant employment circumstances, including distinguishing features of plaintiff's work history and of the instances of misconduct involved, and correctly concluded that plaintiff had failed to establish a triable issue of disparate treatment. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404-05 (10 th Cir. 1997); *see also Rivera v. City & County of Denver*, 365 F.3d 912, 923-24 (10 th Cir. 2004).

Finally, plaintiff objects in passing that it was improper for the magistrate judge to assess the merits of his Title VII allegations when defendant had sought summary judgment on the distinct ground that plaintiff had abandoned any claim under Title VII at a prior scheduling hearing. It is questionable whether this bald, cursory complaint "frame[s] and develop[s] an issue sufficient to invoke appellate review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10 th Cir. 1994) (refusing to consider perfunctory objections not distinctly designated as issues for review). In any event, whatever unfair surprise plaintiff might plausibly claim in relation to the scope or focus of the summary judgment proceedings was clearly dissipated by the magistrate judge's resultant recommendation, and plaintiff has since had ample opportunity to address the dispositive issues both before the district court and on this appeal. *See generally Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160 (10 th Cir. 1991) (holding opportunity to file objections to magistrate judge's recommendation sufficient to satisfy any due process concerns raised by judge's unanticipated inclusion of sanctions analysis).

## ADA Claims

The ADA's provisions governing employment discrimination incorporate the procedural rules of Title VII, including the time bar discussed above. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10 th Cir. 2003). Thus, the primary focus of plaintiff's ADA claims, which were exhausted administratively

in conjunction with his Title VII claims, is perforce on matters connected with his time at the Denver facility.

But plaintiff's own evidence negates any basis for an ADA claim for this time period. The medical record indicates that he had been released for work without restrictions. [1] And, by his own account, he was able to perform his job satisfactorily, did not encounter disability (or race) based harassment, and had no interpersonal problems with co-workers. He was eventually terminated, but for misconduct involving deceit that had no inherent or demonstrated connection with his claimed disability. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) ("An employee cannot state a cause of action for disability discrimination when her employer terminated her for reasons unrelated to a disability.").

Plaintiff tries to circumvent these patent deficiencies in his ADA claim by noting that he was terminated for concealing a workplace accident *while subject*

---

[1] Plaintiff's functional improvement and consequent release for work were practically related to his use of medication prescribed by Dr. Lavin and, thus, it might be maintained that this was in a sense a de facto restriction. Indeed, plaintiff seems to suggest that defendant failed to accommodate his condition by not pre-approving time off for him to secure refills as needed–a matter he said he mentioned in passing, but did not pursue, at a meeting with his supervisors in January 1999. Whatever merit this general line of argument might have is undercut here by the undisputed testimony of Dr. Lavin, who made it clear that plaintiff could have secured refills by a phone call to her office, obviating the need for any accommodation by defendant in the way of time off from work.

*to a final warning of dismissal* and that the warning had been for interpersonally threatening conduct related to (indeed, leading to the diagnosis of) his bipolar condition. Thus, plaintiff argues, his termination was ultimately on account of his disability, which defendant should, instead, have accommodated. This argument rests on a tacit assumption about ADA accommodation that is untenable.

In essence, plaintiff's position is that when defendant learned his workplace violence was evidently rooted in a bipolar condition, defendant was required to retroactively excuse any misconduct related to that condition. But, as many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA. *See, e.g.*, *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 n.14 (5th Cir. 1997) (following *Siefken v. Vill. of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995)); *Office of Senate Sergeant at Arms v. Office of Senate Fair Employment Practices*, 95 F.3d 1102, 1107-08 (Fed. Cir. 1996); *Green v. George L. Smith II Ga. World Congress Ctr. Auth.*, 987 F. Supp. 1481, 1484-85 (N.D. Ga. 1997). As the EEOC's Enforcement Guidance succinctly states, "'[s]ince reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.'" *Brookins v. Indianapolis Power & Light Co.*,

90 F. Supp.2d 993, 1007 (S.D. Ind. 2000) (quoting U.S. Equal Opportunity Employment Comm'n, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* at 24).

In sum, neither the immediate ground for plaintiff's termination, nor the antecedent disciplinary violation placing him in an employment status vulnerable to termination, implicate ADA protections. We conclude that plaintiff's ADA claim must fail as a matter of law.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge

-10-